No. 42,824

THEODORE EUGENE JOBST, a Minor, by DOROTHY L. JOBST, His Mother, Next Friend and Natural Guardian, *Appellee,* v. BUTLER WELL SERVICING, INC., and WILLIAM LEE HANKS, *Appellants,* and DAVID L. BASS, *Defendant.*

No. 42,825

STEVEN BECKER JOBST, a Minor, by DOROTHY L. JOBST, His Mother, Next Friend and Natural Guardian, *Appellee,* v. BUTLER WELL SERVICING, INC., and WILLIAM LEE HANKS, *Appellants,* and DAVID L. BASS, *Defendant.*

No. 42,826

KRISTIN LOUISE JOBST, a Minor, by DOROTHY L. JOBST, Her Mother, Next Friend and Natural Guardian, *Appellee,* v. BUTLER WELL SERVICING, INC., and WILLIAM LEE HANKS, *Appellants,* and DAVID L. BASS, *Defendant.*

No. 42,827

DOROTHY L. JOBST, *Appellee,* v. BUTLER WELL SERVICING, INC., and WILLIAM LEE HANKS, *Appellants,* and DAVID L. BASS, *Defendant.*

(372 P. 2d 55)

Opinion filed June 9, 1962.

*Gerald Sawatzky*, of Wichita, argued the cause, and *L. J. Bond* and *Robert M. Bond*, both of El Dorado, and *George B. Powers*, *Carl T. Smith*, *John F. Eberhardt*, *Stuart R. Carter*, *Robert C. Foulston*, *Malcolm Miller*, *Robert N. Partridge*, *Robert M. Siefkin*, *Richard C. Harris*, *Donald L. Cordes* and *Robert L. Howard*, all of Wichita, were with him on the brief for the appellants.

*R. C. Woodward*, of El Dorado, argued the cause, and *H. Pauline Woodward*, of El Dorado, *Lyle W. Loomis*, of Winfield, and *George Templar*, *Earle N. Wright* and *Ted M. Templar*, all of Arkansas City, were with him on the brief for the appellee.

The opinion of the court was delivered by

Price, J.: Under a stipulation of the parties, approved by this court, the above cases, which are actions to recover for personal injuries arising out of an automobile collision, were consolidated for purposes of appeal. It was further stipulated that only the case of Theodore Eugene Jobst, No. 42,824, be abstracted and briefed, and that the decision in such case would control and be considered as the decision in the other three cases.

The appeal is by two of the defendants from an order striking certain portions of their amended answer.

The question presented is whether, under the facts and circumstances disclosed by the pleadings, those defendants are entitled to plead the doctrines of "sudden emergency" and "rescue" as a defense to the action.

Highly summarized, the allegations of the petition are as follows:

The collision out of which this action arose occurred at about 8:15 o'clock on the evening of January 2, 1960, on a north-south blacktop county highway a few miles north of the city of Augusta. The defendant Hanks, an employee of defendant Butler Well Servicing, Inc., was driving his employer's truck in a southerly direction. He brought the truck to a stop in the west traffic lane of the highway. The highway was twenty-four feet wide. The distance from the left side of the stopped truck to the east edge of the highway was approximately thirteen feet. He placed no flares, flags or other warnings alongside of or to the rear of his truck.

While Hanks was thus stopped on the highway defendant Bass approached from the south. When he came even with the Hanks truck Bass stopped his car in the east traffic lane just opposite the truck. The distance from the left side of Bass's car to the west edge

of the highway was approximately twelve feet. While stopped in this manner, and without turning off his headlights, Bass engaged in a conversation with Hanks, who was standing near his stopped truck. So stopped, the truck and car completely obstructed the highway, and the headlights of the Bass car were left burning.

Very shortly thereafter an automobile, in which plaintiff was a passenger and which was being driven by his father, approached from the north. The father was blinded by the headlights of the Bass car, and, there being no flares or other warnings, his car crashed into the rear end of the Hanks truck, resulting in severe injuries to plaintiff, but which, for our purposes, need not be related.

Paragraph three of the amended answer of defendants, Butler Well Servicing, Inc., and Hanks, alleged that as Hanks was driving the truck south on the highway he noticed that a vehicle, operated by a person not a party to this action, had been driven off the highway and into the ditch. Hanks pulled his truck as far to the right as was possible, leaving the lights of his truck burning. It reasonably appeared to him that the persons in the ditched car were in serious condition and in need of immediate medical attention to prevent their death, and in stopping his truck he was attempting to save a life. While so engaged, defendant Bass approached from the south and brought his car to a stop. The car in which plaintiff was riding was visible for over a quarter of a mile as it proceeded southward toward the scene. Bass flashed his lights and signalled to plaintiff's driver in an effort to warn him, but the driver proceeded down the highway at a high and dangerous rate of speed, and, failing to heed the warning, drove directly into the rear of Hanks' truck at the very moment Hanks was attempting to save a life or lives of those persons in the ditched car, and that, under the circumstances, he had no time or opportunity to set out flares, and that the collision was solely and proximately caused by the negligence of plaintiff's driver.

The amended answer also contained the following allegations as further defenses:

"Fourth: In the alternative, these defendants allege and state that plaintiff's injuries were caused by the negligence of William E. White, Gary Devore and Susan Wright. . . .

"Fifth: These defendants allege and state that at all times material, defendant Hanks was acting in a sudden emergency not caused or created by his conduct, but caused by the conduct of William E. White, Gary Devore and Susan Wright. While so acting, he chose that course of conduct designed to prevent harm to the plaintiffs, his co-defendant Bass, the said White, De-

vore and Wright as well as any other users of the highway, and to save the life of said Devore.

.   .   .   .   .   .   .   .   .   .   .   .   .   .

"Seventh: At the very moment of the accident, defendant Hanks was attempting to rescue the said Gary Devore from death by bleeding which resulted from the injuries the said Devore had received in a prior accident. The blood was running down the neck of Gary Devore like jelly and it appeared to the defendant Hanks that if he did not come to the aid of the said Devore and rescue him, he would immediately and surely bleed to death. The defendant was not guilty of negligence as a matter of law for conduct performed in the attempt to rescue the said Gary Devore from sudden death."

(From the foregoing it will be seen that White, Devore and Wright are the parties who were in the ditched automobile.)

Plaintiff moved to strike the above-quoted portion of the fourth paragraph of the amended answer on the ground that such allegation was a bald conclusion, was redundant and immaterial, and constituted no defense to plaintiff's cause of action, and was highly prejudicial.

Plaintiff also moved to strike the above-quoted fifth paragraph of the amended answer on the ground that it did not state facts sufficient to constitute a defense, and that its allegations were redundant, immaterial and highly prejudicial.

Plaintiff also moved to strike the above-quoted seventh paragraph of the amended answer for the reason that other allegations of that pleading showed that Hanks was not involved in the prior accident which occasioned injury to Devore, who, it is alleged, he, Hanks, was trying to rescue, and that the conduct of Hanks, who came upon the scene of that accident after it had occurred, in attempting to rescue Devore, constituted no defense to the negligent conduct of Hanks as alleged in the petition.

This motion was sustained and the above-quoted portions of the answer were stricken.

From that ruling defendants, Butler Well Servicing, Inc., and Hanks, have appealed.

The status of defendant Bass in the action is not disclosed by the record, and he is not involved in this appeal.

Although defendants have appealed from and specify as error the entire order striking the above-quoted allegations from the amended answer, any question concerning such ruling with respect to that portion stricken from paragraph four appears to have been abandoned, for in their brief they state the questions to be:

"When plaintiff alleges defendant is negligent in stopping a truck on a highway, may defendant plead in defense to such charge of negligence—
"(*a*) the emergency doctrine based on an emergency arising when defendant came upon an injured person by the roadside needing immediate aid; and
"(*b*) the rescue doctrine based on defendant rescuing such injured person from danger of death at the time of the accident."

G. S. 1949, 8-570, in substance provides that no person shall stop, park or leave standing any vehicle upon the paved part of the highway when it is practical to stop, park or leave such vehicle off such part of the highway, and that in every event a clear and unobstructed width of at least twenty feet of such part of the highway opposite such standing vehicle shall be left for the free passage of other vehicles and a clear view of such stopped vehicle be available from a distance of 200 feet in each direction upon such highway. An exception is contained therein to the effect that it shall not apply to the driver of any vehicle which is disabled while on the paved portion of the highway in such manner and to such extent that it is impossible to avoid stopping and temporarily leaving the disabled vehicle in such position.

Plaintiff contends that the mandatory provisions of the statute prohibit stopping on the paved, improved or main traveled portion of a highway except under the conditions therein set forth (*Martin v. National Mutual Casualty Co.,* 169 Kan. 110, 114, 217 P. 2d 1055); that defendant Hanks was guilty of negligence *per se* not only in stopping his truck—which was not disabled—where he did, but also in failing to leave twenty clear feet to the left thereof for the passage of other vehicles, and that under the facts of the situation presented is not to be relieved of liability by relying on either the doctrine of "sudden emergency" or that of "rescue."

Defendants, while inferentially—if not directly—conceding that the petition alleges facts which, if true, render them guilty of negligence *per se* in stopping the truck upon the highway in violation of the statute, contend that under G. S. 1949, 60-710, they are permitted to plead as many defenses as they may have; that in addition to pleading their version of the facts regarding the collision they should be permitted to plead the specific defenses of "sudden emergency" and "rescue" in an effort to modify the rule making violation of a statute negligence *per se,* and that as a result of the order striking those defenses they will be precluded from asserting

such issues and introducing evidence in support thereof upon the trial of the case.

As pointed out in plaintiff's brief, defendants' version of the facts of the collision, as alleged in paragraph three of their amended answer, and which is summarized above, remains in that pleading and was not stricken. That being the case, defendants are not to be deprived of their right to introduce evidence of those facts.

The theory and rule of the doctrine of "sudden emergency" is that one who, in a sudden emergency, acts according to his best judgment, or one who, because of want of time in which to form a judgment, omits to act in the most judicious manner, is not chargeable with negligence; that one so confronted is not held to the accuracy as would be required of him if he had time for deliberation, and if he exercises such care as an ordinarily prudent man would exercise when confronted by a like emergency, is not liable for an injury which has resulted from his conduct, and that failure to exercise the best judgment in an emergency created by another person is not necessarily negligence even though the error of judgment has results which are lamentable from the standpoint of injurious consequences to others. (*Metzinger v. Subera*, 175 Kan. 542, 547, 548, 266 P. 2d 287; *Meng v. Penner*, 179 Kan. 789, 792, 793, 298 P. 2d 246, and the numerous cases cited therein.)

In this connection defendants argue that violation of a statute or rule which would be negligence in ordinary circumstances may be excused under the emergency doctrine, and that when Hanks suddenly came upon the car in the ditch with its severely injured occupants, he was confronted with an "emergency" and acted in the same manner as other ordinary reasonable-minded persons would have acted under the same circumstances.

We feel compelled, however, to agree with plaintiff's contention that under the circumstances of the situation Hanks was not confronted with a "sudden emergency" within the meaning of the doctrine and the many authorities dealing with it. The one-car accident had already occurred before he came upon the scene. That accident was, so to speak, an "accomplished fact." In no sense of the word was Hanks in a position of imminent peril involving danger by impending accident calling for instantaneous exercise of judgment on his part. The most that can be said of his conduct is that he was merely engaged in rendering aid and assistance to persons already injured. Under the allegations of the pleadings

we believe that it was not error for the trial court to strike the defense of "sudden emergency," as such, from the amended answer.

With respect to their defense based upon the doctrine of "rescue" defendants take substantially the same position as that urged concerning the defense of "sudden emergency."

Because of the high regard placed by the law on human life, the doctrine of "rescue"—sometimes referred to as the "humanitarian" or "Good Samaritan" doctrine—has been developed over the years, and the principle of it is that one who sees a person in imminent and serious peril through the negligence of another cannot be charged with contributory negligence, as a matter of law, in risking his own life or serious injury in attempting to effect a rescue, provided the attempt is not recklessly or rashly made. In other words, in attempting to save the life of another, one is justified in exposing himself to danger in a manner that under other circumstances would deprive him of legal redress for injuries sustained. (65 C. J. S., Negligence, § 124, p. 736; 38 Am. Jur., Negligence, § 228, p. 912; *Smith v. Ice and Delivery Co.,* 117 Kan. 485, 232 Pac. 603; *Parnell v. Security Elevator Co.,* 174 Kan. 643, 258 P. 2d 288; *Brock, Administrator, v. Peabody Cooperative Equity Exchange,* 186 Kan. 657, 352 P. 2d 37.)

As will be seen from the above authorities the "rescue" doctrine has application where the one attempting the rescue seeks to recover damages for his own injuries received while undertaking the rescue. We believe defendants seek to apply the doctrine to a situation where it has no application. Defendant Hanks was not injured and he is not attempting to recover for injuries sustained by him in his rescue efforts, and under the allegations of the pleadings it was not error for the trial court to strike the defense of "rescue," as such, from the amended answer.

The judgment in each of the four cases is affirmed.